## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THE TITAN CORPORATION,

Plaintiff,

-vs-                                                              Case No. 6:05-cv-1533-Orl-18DAB

SUPPORT SYSTEMS ASSOCIATES, INC.,

Defendant.

---

# ORDER

THIS CAUSE comes before the Court upon Plaintiff The Titan Corporation's ("Titan" or "Subcontractor") Motion for Partial Summary Judgment (Doc. 41, filed October 16, 2006), to which Defendant Support Systems Associates, Inc. ("SSAI" or "Contractor") responded in opposition. (Doc. 49, filed November 17, 2006). SSAI also filed a Motion for Summary Judgment (Doc. 43, filed October 16, 2006), to which Titan responded in opposition. (Doc. 51, filed November 17, 2006.) SSAI subsequently filed a Supplemental Opposition to Titan's motion. (Doc. 55, filed January 5, 2007.) After reviewing the motions and memoranda submitted by the parties, the Court grants partial summary judgment to Titan and denies summary judgment to SSAI.

## I. BACKGROUND

SSAI provides logistics and engineering services to the Government, primarily the Department of Defense. On May 29, 2003, SSAI and the Department of the Air Force (the "Air Force") entered into a contract (the "Prime Development Contract") for the development of a

replacement for certain computer modules used in special operations forces aircraft. Soon after SSAI entered into the Prime Development Contract with the Air Force, SSAI entered into a subcontract (the "Development Subcontract") with Titan to develop the modules. According to SSAI, Titan indicated that it would have working prototypes of the modules by July 2004. Titan did not develop working prototypes by July 2004, but informed SSAI that it was making progress on the development effort.

On September 29, 2004, even though the Prime Development Contract and the Development Subcontract had not been completed, the Air Force awarded the production contract to SSAI for a price of $6,283,764 (the "Prime Production Contract"). SSAI and Titan agree that the reason for entering into the Prime Production Contract at that time was that the end of the federal fiscal year was approaching and if the Air Force did not commit funds that had been earmarked for this project, it would lose those funds. On September 30, 2004, through an email serving as "SSAI's Letter of Intent to award a subcontract to Titan in the amount of $5,241,038 . . . SSAI authorize[d] Titan to initiate Material purchasing and to charge labor hours on this contract." (Doc. 41-4 at 2.) While SSAI and Titan never executed a formal writing, they exchanged drafts of a contract and agreed upon all material terms, except for a delivery schedule. SSAI and Titan agree that they entered into a binding subcontract for the production of the modules (the "Production Subcontract").

The Prime Production Contract included a standard Federal Acquisition Regulation ("FAR") Progress Payments clause as provided at FAR 52.232-16. 48 C.F.R. § 52.232-16. The

Production Subcontract also included provisions for progress payments and set forth the procedure for invoicing and payment. Specifically, the Production Subcontract provided that:

> 4.1 Invoices shall be in such form as to permit Contractor to recover. under the Prime Contract, Subcontractor's costs or price to which Subcontractor is entitled under the Subcontract.
>
> 4.2 Subcontractor's invoices shall cite the Agreement and Subcontract number, name of Subcontractor, invoice date and invoice period of performance. In addition, each invoice must include the following information:
>> Total dollars by labor category
>> All associated indirect costs
>> Total of authorized travel and/or material expenses during the billing period; and
>> Cumulative amounts
>
> 4.3 Subcontractor shall present the Contractor an invoice for costs incurred in accordance with the progress payments clause not more frequently than monthly. Standard form 1443 shall be utilized.
>
> . . .
>
> 4.6 The Contractor agrees to pay the Subcontractor, within ten (10) days after the Contractor has received payment from the Government for the Subcontractor's invoice including. without limitation, progress payments. The Contractor shall not be responsible for time lapse due to improperly completed Subcontractor invoices.
>
> 4.7 In the event the Government suspends or reduces the Contractor's progress payments under the Prime Contract for reasons unrelated to Subcontractor's performance of this Agreement. the Contractor agrees to use best efforts to expeditiously remedy any and all conditions and situations that caused the Government to suspend or reduce such progress payments so as to restore progress payments. if any, to Subcontractor under this Agreement as soon as practicable.
>
> 4.8 The Subcontractor shall maintain substantiation of invoices by evidence of time cards, purchase approvals. vendor invoices. travel approvals and expenses, and actual payment of costs. All such evidence shall be readily available for audit purposes.

(Doc. 43-20 at 9-10.)

Titan alleges that pursuant to SSAI's authorization in the September 30, 2004 email, Titan began ordering long lead items for the Production Subcontract and incurred labor hours.[1] On November 1, 2004, after communicating with representatives from SSAI as to the instructions and format for submitting invoices for progress payments, Titan submitted its invoice and required data to SSAI for its first progress payment under the Production Subcontract in the amount of $1,081,915.78, which represents ninety percent of the costs allegedly incurred by Titan from September 29, 2004 through October 22, 2004. On November 10, 2004, SSAI confirmed that Titan's invoice had been received and processed. Indeed, SSAI submitted the request for progress payment to the Air Force on November 17, 2004. In December 2004, SSAI received payment from the Air Force for Titan's first progress payment, but did not, within ten days of receiving the funds from the Air Force, pay Titan.[2]

The parties are in dispute as to Titan's progress under the Development Subcontract. SSAI alleges that Titan was unsuccessful in developing the modules because Titan's design repeatedly failed testing and there were substantial problems with the modules. Titan, however, denies that it was unsuccessful in its efforts to develop the modules and alleges that it was hindered by changes in the Development Subcontract and problems with the testing equipment.

---

[1]SSAI alleges that Titan had begun to purchase production materials even before the August 2004 negotiations for the Production Subcontract took place. (Doc. 43 at 3.) Titan admits that it purchased about $15,000 to $20,000 worth of materials before receiving the September 30, 2004 authorization from SSAI, but that it did not include those amounts in invoices for progress payments. (Doc. 51 at 10.)

[2]SSAI claims that it returned the funds to the Air Force.

-4-

On March 14, 2005, SSAI directed Titan to discontinue all work on the Development and Production Subcontracts.

Titan initiated this action alleging breach of contract or, alternatively, promissory estoppel. (Doc. 1, filed October 13, 2005.) SSAI subsequently answered, raised affirmative defenses, and counterclaimed. (Doc. 9, filed November 10, 2005.)

## II. DISCUSSION

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its

burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

*B. Analysis*

Titan contends that it is entitled to partial summary judgment because SSAI breached the Production Subcontract by failing to pay Titan its progress payment within ten days of receiving the funds from the Air Force. (Doc. 41 at 8.) SSAI, in its motion, contends that it is entitled to summary judgment because it did not breach the Production Subcontract and Titan is not entitled to recover on the basis of promissory estoppel. Specifically, SSAI argues that it dd not breach the Production Subcontract because Titan was not entitled to progress payments and that even if SSAI should have paid the progress payments, Titan is not entitled to retain those payments. (Doc. 43 at 15-20.)

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999). There is no dispute between the parties that a Production Subcontract existed between Titan and SSAI. (Doc. 41 at 3; Doc. 43 at 7.) It is further undisputed that SSAI authorized Titan "to initiate Material purchases and to charge labor hours to the contract" and that Titan

initiated material purchases and charged labor hours to the contract. There is also no dispute that one of the terms of the Production Subcontract provided for progress payments and that Titan submitted an invoice for such a payment. (Doc. 43 at 7-8.) SSAI admits that its September 30, 2004 letter of intent "authorized Titan to begin purchasing materials and charging labor to the [P]roduction [S]ubcontract." (Id. at 6.) SSAI, however, argues that the costs of purchasing production materials were not reasonable nor allocable as required by FAR 52.232-16(a)(4)(i) because it was unreasonable for Titan to incur costs to build the modules when it had not yet delivered working modules under the Development Subcontract. (Id. at 18.)

There is no evidence that prior to Titan submitting its request for the first progress payment, either SSAI or the Air Force objected to such payments. Indeed, SSAI gave instructions to Titan regarding how to submit invoices for progress payments. SSAI processed Titan's invoice for the first progress payment. SSAI submitted the request to the Air Force and SSAI received the funds from the Air Force. Such actions on behalf of SSAI indicate that it considered the costs of purchasing the materials in preparation for production to be "reasonable" and "allocable." Furthermore, despite SSAI's argument that progress payments under the Production Subcontract were conditioned upon the successful development of modules under the Development Subcontract, SSAI has failed to show that the progress payments were dependent upon Titan's performance under the Development Subcontract. SSAI admits that it did not forward the funds to Titan, as required by the Production Subcontract. Thus, SSAI committed a material breach of the Production Subcontract by failing to forward the progress payment it had received from the Air Force to Titan.

Accordingly, Titan is entitled to partial summary judgment because SSAI breached the Production Subcontract.³

The Court has not decided that Titan, at this time, is entitled to the full amount it requested as a progress payment. Rather, the Court decides that Titan was entitled to a progress payment and that SSAI breached the Production Subcontract by failing to forward the funds it received from the Air Force to Titan within ten days. Any other claims or counterclaims remain undecided, as well as the amount of any damages.

### III. CONCLUSION

For the foregoing reasons, Titan's motion for partial summary judgment is **GRANTED** and SSAI's motion for summary judgment is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on this ___3___ day of July, 2007.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

³Since the Court is deciding that Titan is entitled to summary judgment on its breach of contract claim, it does not address the argument by SSAI, in its motion, that Titan is not entitled to recover under its alternative claim of promissory estoppel.